Our fifth case this morning is Beach Forwarders v. Service By Air. Good morning, Your Honors. James Brighten Booker for Appellant Service By Air. The respondent in this case is Beach Forwarders. It is an independent freight, shipping, and logistics business. My client, Service By Air, is a freight, shipping, and warehousing business. My client, Service By Air, provides shipping logistics services to assist the Beach Forwarders and other companies like Beach Forwarders with delivering their shipments and back office services like billing, invoicing, and that sort of thing. In 2010, the parties entered into an agreement to govern their relationship. The initial term of that agreement was three years. Neither party under that initial agreement could terminate except for cost. Prior to that three-year agreement expiring, the parties entered into a one-page amendment. Under that one-page amendment, my client had the right to provide Beach Forwarders with notice that the agreement would not be renewed, but it continued to be true that neither party could terminate during any current term except for cost. In August 2020, Beach Forwarders sent notice saying they intended to terminate. Service By Air said, you have no right to terminate. We reject your notice. After that, the parties continued to operate under that agreement while Beach Forwarders filed their lawsuit and sought a declaration from the court about what its termination rights were or were not. So, just to be clear, we agree. This is a contract of indefinite duration. The automatic renewals in the amendment make it one. But the question is whether the parties intended for this contract to be terminable at will or only upon the occurrence of a specific event. Before you get into the contract provisions that bear on that question, if I could just clarify the relationship here. Beach Forwarders is referred to in the contract as your client's agent. That's correct. But I don't understand this to be a distributorship or that kind of contract, or maybe I'm misunderstanding this. You provide support services for these shippers. That's right. And this is one of your customers. It's not an agent of yours. This company that you have as your counterparty here doesn't market your products. That's correct. I mean, they do ship freight under the banner of Service By Air. So, they are operating as a station for us. But they're completely independent. They're not acting on our behalf. They're acting on their own behalf, and we're supporting their business. Essentially, they're using our branding to attract customers and get more freight shipping and warehousing. So, it is a franchise in that sense? It would not fall under franchise law. We're just providing services to them. But, yeah, they are operating as one of our stations. That's correct. You also said that the agreements prohibited a party from terminating except for cause. Can you point to specific provisions in the agreement that say that? Yeah, so under Section 20 of the agreement, it governs both termination by Service By Air and beach forwarders. And it says that the parties may cancel. Let's take 20A, which is the case of beach forwarders terminating. It says that they may terminate if Service By Air breaches and we don't cure that breach. Now, what the district court did was the district court focused entirely on the language may terminate. I guess my question is specifically where in the agreements does it say that a party cannot terminate without cause? Well, that, I would say, is the error that the district court made. You've got to read the agreement as a whole to determine what the parties intended. So, we have this court's decision in Baldwin. That court is another case in which, and I cite the relevant language, or it's quoted on page 16 of our brief, where in that case it says, this agreement shall continue in force without limit of period, but may be canceled by the licensor for material breach. That same may language. But Baldwin starts except as provided herein, right? Right. And that's the language that the court focused on when it discussed the contract. And I don't see that, I don't see this may provision starting with except as provided herein. Yeah. Well, in Baldwin, the court placed a lot of attention on the fact that there is a cure provision and said why have a cure provision if you can just terminate for convenience? What's the point? I think the Baldwin called it a waste of paper and ink to have that language. But to answer your question specifically, Judge Lee, if you go to 20A, after the provision which I just cited where it talks about you have a chance to cure, or SBA has a chance to cure, the last sentence says, a termination of this agreement by agent, which is the name given for breach of orders in this agreement, for any other reason shall be deemed a termination by agent without cause. And that is why I asked the question, where in the agreement is there a clear statement that a party can only breach or only terminate the agreement for cause? Well, I think that does constitute a clear statement because what it, if you're, the ultimate purpose. So you're relying upon that last sentence as your clear statement in the party's agreement that the parties unambiguously agreed that a party could only terminate for cause. In part, I'm also relying on the rest of the provision which says, breach of orders may terminate in the event of material breach by SBA. The SBA does not cure. That is a clear statement because there would be no reason to have a cure provision if they could just terminate for convenience. But the, I thought that the Illinois Supreme Court dealt with that issue where there was a, they may terminate provision and the Illinois Supreme Court said that that was permissive. Well, that, and I think that's overly simplistic because may in Baldwin was not permissive. No, no, but that's where, and this is where I circle back to where I started. In Baldwin, the court said, why specify that, quote, except as herein provided, end quote, the license continues unless canceled for material breach, unless such a breach is indispensable to cancellation. So again, Baldwin focused on the except as herein provided to deal with the Illinois Supreme Court's language in Jasperson that talks about permissive. And here, I don't see such language. Well, so let's talk about Jasperson for a second. It does have may language, but the court didn't stop there. And then the court went and looked at the other provisions in the agreement. And it said, well, 3M, which had acquired Trimline's interests, said, well, 3M has the right to terminate for convenience the subject matter of the agreement. They had the right to terminate the Trimline license issued to Jasperson for convenience. Jasperson had the right to just terminate for convenience. So in that case, the court went past the may language to say, well, these parties' intent is shown by the fact that either side can just terminate this thing whenever they want, independent of the may terminate language. So contrast that with the Burford decision, where only one side had the right to terminate for convenience. And if you want to call service by heirs option to terminate or to deny renewal, terminate for convenience, in that case, this court said, well, where the contract gives one party the right to terminate for convenience, but not the other, that expresses their intent. So when the district court judge calls that a potential fly in the ointment, it's much more than that, because our case is like Burford, not like Jasperson. That fact that in the agreement, it had us having a right to terminate for convenience, but not beach forwarders, that shows the parties knew how to write an agreement and how to do that in their agreement, and they didn't. But in Burford, again, the standard, I assume you agree. And if you don't, you can let me know. The standard is, is there a clear statement that it's not terminable by will? And in Burford, the language was APS cannot terminate this agreement unless it is violated by Burford. So that seems very clear. Here, the sentence you're relying upon is the last sentence in paragraph 20. How is that as clear as the language in Burford? Well, in Burford, that's the only language about termination at all, that one sentence. What Baldwin teaches us, what even Jasperson treats us, is you've got to look at the contract as a whole. You have to look at the amendment and the agreement together to decipher the party's intent. The district court didn't even attempt to do that. I go back to what meaning does the cure provision have if it doesn't mean you have to try it? What's the point of giving my client the opportunity to cure if the other side can just terminate for convenience? I mean, I think it's clear. Well, I mean, I guess I could think of different reasons why parties might agree to a cure provision, even if a contract's terminable by will, for example, rather than if Party A and B are in a contract and Party B breaches, but there is a cure provision, Party A would then have to seek cure before Party A sues for breach of contract and damages. So there are economic reasons why the parties, even in a terminable at will relationship, might include a cure provision. Well, I think in Baldwin that argument was presented that, well, maybe you would have to – excuse me. Give me one second here. That same argument was made, well, maybe for damages you would have to go and provide the opportunity to cure, and the court rejected that argument saying that, look, if you could terminate for convenience, you wouldn't have to provide an opportunity to cure to sue for damages. You would just terminate and sue for a breach. Well, the cure clause, the Section 20 about material breaches and the cure provision, it appears in the original contract, not the one-page amendment. Correct. And it has to be read in the context of the original contract, which it has a three-year term. Correct. So there is no option to terminate a discretionary termination on either part. There's a mutual non-renewal option at the end of the three-year term, but customarily you see these provisions regarding notice and an opportunity to cure before a contract with an agent. That's why I ask my preliminary questions about what sort of contract we're dealing with here with a franchisee or an agent. In a distributorship situation, you'd have cure provisions like this, and these read very much like those kinds of mutual cure provisions in a fixed-term contract that has a mutual non-renewal clause at the end of the term. It doesn't sync well, for lack of a better way to put it, with the language of the amendment, which is what creates the perpetual obligation here. Right. Well, that may be true, but it's not the court's job to rewrite the economic bargain that the party struck. Well, no. I'm trying to understand the contract as a whole. You're inviting us to read it holistically and read in the context of the contract that the party's bargained for, the three-year fixed term with a one-year renewal option at the end of that, plus a mutual non-renewal option at the end of that term. Section 20, which is what you're hanging your hat on here, makes sense. It's hard to reconcile that with a contract of indefinite duration in the way that the Burford court and the Baldwin court and the Jesperson courts were trying to reconcile similar language in the context of contracts of indefinite duration. Well, the amendment changed the term of the agreement with the automatic renewals, but it didn't change the termination rules. It made it a contract of indefinite duration, which changes the termination rules as a matter of law under Illinois law, because if a contract is of indefinite duration, it is presumed to be terminable at will. So by that amendment, you imported the legal background of the jurisdiction, which is that once you converted this to a contract of indefinite duration, it becomes terminable at will. Illinois law also teaches us we have to read the amendment and the agreement together. So when beach forwarders signs the amendment, they need to consider how the amendment affects the agreement. And the amendment specifically references Section 3 and Section 20. At a minimum, beach forwarders under freedom of contract principles should have gone back, read 20 and 30, and decided whether they wanted to agree to it. Well, I've used my time. That's the second issue that the district court didn't reach, right? No, that's the same issue. I'm just saying is that the amendment references Section 3 and Section 20 of the main agreement. So when the person, the president of beach forwarders, signs the amendment, she knows or should know to go read the agreement also to understand what she's signing. And if she wants to argue that she doesn't understand the amendment, then that is the second issue which the district court never reached. I've used my time. I'm respectful of the court. We'd like to have some rebuttal, but I'll wait to hear from you on that. Thank you. Mr. Lieber. Good morning. Howard Lieber on behalf of the appellee. As you can imagine, I have several points that I'd like to make, building on some of the points that you, Judge Sykes, and Judge Ali raised. First of all, one of the most fundamental points that we disagree on, SBA and I, is Section 3 of the agreement specifically provides a termination aspect without cause at the conclusion of the initial three-year term. I think that is a critical point. So basically, Section 3 of the agreement, as originally written, and there is no dispute about this, provided that both parties, after the initial three-year term was up, could give notice without cause to not renew the agreement. And as this court has previously said, it is undisputed. The contract has to be read as a whole. Section 20A, which SBA has hung their hat on with this without cause point, going back to Burford, Section 20A was included in the agreement along with Section 3. To make both of those sections read as a whole make sense, you have to read Section 20A as saying, Section 20 is for defaults and for actions of material breach. And that last sentence of Section 20A, where it says, for any other reason would be without cause, I would argue, under the language of, I believe it was, ATN and Baldwin, is procedural. It's simply saying that it's classifying 20A in that fashion, but Section 3 basically gave both parties the right to terminate. I would also add... But only at the end of the three-year term. Yes, ma'am. That is correct. Or perhaps the discretionary additional year. Exactly. If your client provided the documentation necessary and it was acceptable to SBA. Right. If they renew and it goes on, then annually there would be the right... Well, originally just for the one year. So it was a three-year contract with a one-year option to renew. That's right. I'm looking at the language. That's right. So four years. Yes. And so Section 20 deals with... Defaults. Mid-term terminations for cause. And critically, Section 20A and then there's Section 20B and 20C. 20B and 20C list actions of breach forwarders which would constitute material breach. And that dovetails back to Jesperson because the Illinois Supreme Court in Jesperson talked about using the permissive word may, which this agreement does, and also a non-exclusive list of material breaches. If you look at 20B and 20C, they are non-material... I'm sorry, they're non-exclusive lists of breaches because at the end of each of those paragraphs, at the end of each of those lists, is the wording agent otherwise violates this agreement. So this falls squarely within the language of Jesperson. Now, I would add one additional point, and that is language that the court used in Burford. You have to then look at the amendment. Nowhere in the amendment does it... First of all, nowhere in the amendment does it say breach forwarders. It says agent, so it's generic. But second, nowhere in the amendment... And SBA had the ability to do this. Nowhere in the amendment does it change the language of 20A or describe in that 20A will be deemed to mean that agent can only terminate for cause. It doesn't say that. It doesn't say anywhere in the amendment that there is any change to 20A, B, or C. It adds 20D, a new section, but it doesn't change... Which, by the way, only references SBA. It adds rights on behalf of SBA, but it does not in that regard change anything about 20A, B, or C. Which is critical. And going back to this court's language in Burford, looking at a clear statement that the only way to terminate is for cause, there is no clear statement. And I can tell you, Judge, in response to your question, I have run a keyword search on the agreement. There is nowhere in there where it says my client can only terminate for cause. It's just not there. And that was what the parties agreed to. If you want to look at it as a whole, even if you then look at it in the context of the amendment, there's nothing in the amendment that says my client can only terminate for cause. And I would reference, at pages 487 and 488 of the ATN case, this court said, under the two Jesperson decisions, a contract permitting one party to terminate based on a material breach by the other party is deemed terminable at will. That's at the bottom of 487 and the top of 488. And that is exactly what this agreement says. If you look at Section 20C as in Charlie, that gave SBA the ability to terminate without even giving beach forwarders notice and an opportunity to cure, which is a distinction from 20B. So beach forwarders didn't have the opportunity to cure under Section 20C. So my point is that, for a moment, forget about all of the different language in Baldwin, ATN, Burford, those cases. At the end of the day, we go back to Jesperson, as the district court did. And the district court in Jesperson... I'm sorry, the Illinois Supreme Court in Jesperson made it very clear that under these circumstances, with a contract that has this language, it is terminable at will by either party. There is nowhere where it says only for cause. That's the key point here. And the district court hit the nail on the head. There's basically no fact dispute. There's multiple undisputed facts here. There is no question that the contract is of indefinite duration. There is no question what the Illinois Supreme Court has said. There is no question that the contract nowhere, the agreement, and nowhere in the amendment, is there any statement saying that it can only be terminated for cause. Nowhere. So I would now leave it up to the court. If you have any questions, I'm happy to answer that. Can you answer a question about the date discrepancies? Yes, ma'am. In the amendment? I'm aware. You know where I'm going with this. It says the amendment is made as of the 22nd day of November. No, that's the original contract. The agreement is made, the amendment is entered into on October 31st. You're looking at 1AA, September 30, 2013? Yes. The term is extended to that date, but it was previously expiring on November 21st, 2013. I will say to you, Judge, that on the non-indefinite duration argument in the underlying court, my initial arguments included that, that that was a basis to void it. The district court never got to that because he ruled based on Jesperson. But, yes, I am acutely aware. So this is basically backdated to justify? No, SBA is taking the position it was a typo. It should have said the term is extended to 2014 because it was, I believe, supposed to be a one-year. Right, but even then it doesn't, I mean the term of the previous contract ended on November 21st. It was signed after it presumably expired. Right. I completely understand where you're going. I raised it in my declaratory judgment. We never got there. Okay. Thank you. Thank you. All right. Your time had expired, Counsel, but you can have an extra two minutes. There's a lot going on here. Thank you, Your Honor. Well, first off, I want to circle back to the damages to your argument. That is in Baldwin. That was the district court's rationale to say, well, we can say, the cure provision is only relevant to seeking out damages. The Seventh Circuit rejected that rationale. So I want to point that out. In terms of the last sentence of Section 20A being merely procedural, there is no procedure in there. The procedural rule that Baldwin did is it called the Jesperson rule procedural because it said you had to give 30 days notice. And Baldwin said 30 days notice. That's procedural. That's not substantive. ATN case that Counsel just raised, that's another case, like Jesperson, where the court said both sides have a right to terminate at will through non-performance. So this must be a contract that can be terminable at will. Again, the context of the whole agreement mattered to the Seventh Circuit in that case, ATN. With respect to the amendment, the agreement, the amendment was signed before the original three-year term expired. It would have expired on November 21 of 2013. It is SBA's position that that was merely a typo. But whether it was a typo or not, the function of the amendment was to create an agreement that would automatically renew. So whether you go forwards or backwards, it's still going to be one-year renewals after the amendment. I would submit that whether this is a Scribner's error would go to a question of party's intent. There was so long between the, one thing strange about this case is it took so long for the district court to rule. Of course, the district court multiple times said he was going to deny the motion. We went on with discovery. I've taken the plaintiff's deposition. I know what she's going to say about the agreement. I know what she's going to say about the amendment. The thing is, is that none of that's in the record. And so. Certainly. But on the facts here. Viewing the facts most favorable to us. She assumed that's a Scribner's error. We're the non-moving party here. And I should not be a. A obstacle to reversing the district court and remanding for. Further proceedings on the question of whether the president. Before. Understood what she was signing. When she signed the amendment. Thank you. Thank you very much. Thanks to both council. The case is taken under advisement.